UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBRA L. REEVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE No. 08-CV-472-FHM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff, Debra L. Reeves, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less

---

[1] Plaintiff's December 30, 1992 applications for Disability Insurance and Supplemental Security Income benefits have been denied by Administrative Law Judges (ALJ) five times. [R. 12-24, 193-201, 272-280, 395L-395W, 651-660]. The first denial decision was remanded by the Appeals Council. [R. 215-216]. The second decision was upheld by the Appeals Council but appealed to the United States District Court for the Northern District of Oklahoma and was reversed and remanded by Magistrate Judge Sam A. Joyner. [R. 286-296]. The third decision was also appealed to the Northern District and was remanded by Judge Joyner upon the filing of the Commissioner's Agreed Motion to Remand. [R. 397-398]. The fourth decision was reversed and remanded again by Magistrate Judge Joyner. [R. 674-698]. The fifth decision was entered by ALJ Gene M. Kelly on October 16, 2006. [R. 651-660]. The Appeals Council denied review on June 20, 2008 [R. 638-640], which represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. This appeal followed.

than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 45 years old at the time of the final hearing on July 18, 2006. [R. 916]. She claims she was unable to work May 15, 1992 through February 1, 2004, due to back, right arm, leg and neck pain, stomach problems, headaches and depression.[2] [R. 920, 922-926]. The ALJ determined that Plaintiff has severe impairments consisting of problems with her back, eyes, hip, leg, liver, stomach, thyroid, right arm, knees, neck and hands as well as depression, anxiety, shortness of breath, hypertension, headaches and obesity. [R. 653]. Despite these impairments, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to lift and/or carry 10 pounds; stand and/or walk 4 hours in an 8-hour day at 2 hour intervals; sit up to 6 hours in an 8-hour day at 2 hour intervals; occasionally climb, bend, stoop, squat, kneel, crouch, crawl, reach overhead with her right upper extremity; twist and nod her head and twist her torso; that she is slightly limited in feeling, fingering and grasping with her right upper extremity; that she would require an environment with low noise and low light;

---

[2] At the July 18, 2006 hearing, Plaintiff's counsel advised Plaintiff is seeking benefits for a "closed period" from May 15, 1992 to February 1, 2004. [R. 914, 916-917]. Plaintiff has acknowledged in her Reply brief [Dkt. 18] that she seeks benefits for that closed period of time.

and would need to avoid rough, uneven surfaces, unprotected heights, fast and dangerous machinery and dust, fumes and gases; and that she would be limited to simple routine and repetitive type tasks. [R.653]. He determined that Plaintiff's RFC precluded returning to her past light and medium level work. [R. 658]. Based upon the testimony of a Vocational Expert (VE), he found Plaintiff could perform sedentary work as an order clerk and concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 659]. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ committed the following errors: 1) "The ALJ failed at step 5 of the sequential evaluation process because [Plaintiff] cannot perform the job the [VE] found for her; the ALJ was wrong to rely on the testimony of the VE;" 2) "The ALJ failed to perform the proper analysis regarding treating physicians' opinions deserving controlling weight; failed to properly weigh the opinion of the treating physicians who found [Plaintiff] unable to work at the sedentary level of exertion; did not properly explain why he chose one source over another in the light of the rules, regulations, and case law;" and 3) "The ALJ failed to perform a proper credibility determination because he failed to determine which of [Plaintiff's] testimonial statements were believable as required; he failed to discuss many of the *Luna* factors; he improperly required the objective medical evidence to demonstrate the severity of [Plaintiff's] complaints; and he relied on vague and ill-defined reasons for rejecting credibility without tying his

conclusions directly to the evidence." [Dkt. 16]. For the following reasons, the Court finds this case must be reversed and remanded to the Commissioner for reconsideration.

### **VE-DOT Discrepancy**

Plaintiff's first allegation of error involves the testimony elicited from the VE at the hearing on July 18, 2006. In response to the first hypothetical offered by the ALJ, the VE identified one medium job, two light jobs and one sedentary job as a representative sample of jobs available in the region. [R. 939-940]. This exchange followed:

> Q        All right. Let's change our hypothetical. We'll keep our same 45-year old female, GED, adequate ability to read, write and use numbers. I want to keep this individual at sedentary and light work. Lift and carry to 20 pounds; to stand and walk four hours in eight at a two-hour interval; to sit six hours in eight at a two-hour interval; occasional climb, bend, stoop, squat, kneel, crouch, crawl; reach overhead with the right upper extremity; twist and nod the head; twist the torso.
> A slight limitation in finger, feel and grip with the right upper extremity. I'm not saying the hands can't be used, but she shouldn't be doing small, tedious tasks with the right hand. She can do big tasks. She can put her kid's bicycle together, but she may not be able to play with the kid's erector set. I want it to be a low-noise and light environment. I'm not trying to restrict routine, ordinary business, commercial or educational noise and light environments, but if she's going to be out in bright sunlight flagging trucks, working around photo floods, being on a foundry floor or things of that nature, I'm trying to restrict.
> Avoid rough, uneven surfaces; unprotected heights; fast and dangerous machinery; dust; fumes and gases. With the depression, we'll keep the work simple, repetitive and routine. I'm attempting to limit stress and content. And I want to have a slight limitation in contact. No, I don't want to have that. She, I don't have problems - - she doesn't have problems with people. I want to keep the work simple, repetitive and routine. I want to keep the same assumption about pain as I had in hypothetical one. With the new

> restriction, I want to keep the same assumption about medication and its effect. Can this person return to and do their past relevant work?
>
> A     No. This person would, would be limited to sedentary work because of their inability to stand and walk more than a total of four hours out of an eight-hour day.

[R. 941-942].

\* \* \*

> Q     All right. Third hypothetical, we'll keep everything that's in hypothetical two, except that I will limit the standing and walking to four hours in eight for both of them, a total of four hours in an eight-hour day and I'll limit lifting and carrying to ten pounds. Was there past relevant here?
>
> A     No.
>
> Q     And there's still no transferable skills?
>
> A     No.
>
> Q     And am I correct there's no light and sedentary, there's no light and medium work?
>
> A     Correct.
>
> Q     Is the sedentary work still good?
>
> A     Yes, it is.
>
> Q     Okay. Is there any deviation today that you haven't already explained from the Dictionary of Occupational Titles?
>
> A.     No.

[R. 943-944].

The VE was then questioned by Plaintiff's attorney as follows:

> Q     For simple, repetitive work is that generally an SVP of two?

A           Yes.

Q           And if we look at the, the third hypothetical which is, has, you know, the restrictions of two and then that it limits at sedentary.

A           Uh-huh.

Q           If we limit the individual to occasional reaching with the right dominant hand, not just overhead, but, but in, in front - - what impact would that have on the sedentary job base?

A           Oh, it might impact them maybe if you add that, that along with, we, we did have the slight finger, feel, grip limitation there, didn't we?

Q           Uh-huh.

A           Then at maybe 50 percent.

Q           What about the impact of the, the simple repetitive work? I mean it - -

A           No, it wouldn't have any.

Q           I don't understand what's being repeated then. I mean, wouldn't you be using your right arm?

A           Simple, repetitive not in the physical sense of repetitiveness, Mr. White. It, it means just doing an activity over and over again and not necessarily using your - - simple, repetitive means you don't have to learn new things. You learn it and it becomes in your mind repetitive.

Q           Okay, And - -

A           Nobody ever did that to me before.

Q           Oh I, I didn't really do it to you. I was just asking.

A           Well, I mean I couldn't figure out where you were going with that until you linked it to - - repetitive movement, when it's repetitive, you know, mental activity.

[R. 945-946].

This exchange followed between the ALJ, Plaintiff's attorney and the VE:

ALJ: Okay. If it helps you any, at all what the simple, repetitive and routine, that's why I usually limit it to the psychological aspects and I always stress it's for stress and content, not so much the physical ability of it, but - -

ATTY: Well, often times, you know, with sedentary work it tends to be working with things.

ALJ: Uh-huh.

ATTY: And, and, and typically that work - - I mean yeah, since it, that's an SVP of two and they're working with things, then - -

VE: But he'd already covered that in this light limitation in finger, feel and grip, so.

ATTY: Okay. It's, you're never too early to learn or be reminded.

[R. 946-947].

The sedentary job identified by the VE was order clerk, DOT No. 209.567-014. [R. 940-941].[3]

Plaintiff asserts the limitation in her RFC to simple, routine and repetitive type tasks "means that she is limited to performance of jobs requiring a reasoning level of 2" and that the job of order clerk, the only sedentary job identified by the VE as available to Plaintiff, requires a reasoning level of 3. [Dkt. 16, p. 3]. Plaintiff argues she cannot perform the job and that the ALJ was wrong to find the VE's testimony was in accordance with the DOT. She contends reversal of the ALJ's step five determination

---

[3] See Dictionary of Occupational Titles, U.S. Dept. of Labor, Office of Administrative Law Judges (4th ed.1991), *at* http://www.oalj.dol.gov/libdot.htm

7

that Plaintiff is not disabled is thus required. *Id.* Plaintiff relies upon the principle set forth in *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) and *Pritchett v. Astrue*, 220 Fed. Appx. 790, 793 (10th Cir. 2007),2007 WL 867182, (unpublished) for this contention.

Defendant responds that *Hackett* and *Pritchett* "merely state that the RFC 'seems inconsistent' with a level 3 reasoning," that the Tenth Circuit "did not hold that the Court is bound to remand such a case, and the ALJ could explain his finding." [Dkt. 17, pp. 2-3]. Defendant's arguments against reversal on this basis are unavailing.

The Tenth Circuit has consistently adhered to the rule adopted in *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999), reaffirmed in *Hackett*, 395 F.3d at 1175 and codified in Social Security Ruling (SSR) 00-4, that an ALJ must elicit a reasonable explanation for any material conflicts between a VE's testimony and occupational information in the DOT. The court held that reversal was required in *Hackett* because an unresolved facial conflict existed between a claimant's "inability to perform more than simple and repetitive tasks" and the "level-three reasoning" required in the DOT for the jobs identified by the VE. *Hackett*, 395 F.3d at 1176. Under circumstances indistinguishable from the *Hackett* case, the *Pritchett* court concluded remand was required to allow the ALJ to address "the apparent conflict between plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the job identified for him by the vocational expert." *Pritchett*, 220 Fed. Appx. at 793 (unpublished). Like the VE in *Pritchett*, the VE in the instant case identified only one job that Plaintiff could perform with the RFC described by the ALJ. And, like the job identified in the *Pritchett* case, the order clerk job requires reasoning level three which

8

is defined as the ability to apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations. *See* DOT, Vol. II at 1011. Contrary to Defendant's argument, remand in this case is required to allow the Commissioner to address this apparent conflict in accordance with the guidance provided by the Tenth Circuit's decision in *Hackett*. In this regard, the ALJ is urged to define the terms "simple, repetitive and routine" as used in limiting the "stress and content" of job tasks that Plaintiff can perform. The ALJ should then discuss how such work is consistent with a reasoning level of three as defined by the DOT.

Defendant also argues that the ALJ did not limit Plaintiff's ability to apply commonsense understanding or deal with concrete variables in standardized situations and that the VE clarified in her testimony that simple, repetitive work equated to unskilled jobs with a Specific Vocational Preparation (SVP) of two. [Dkt. 17, pp. 2-3]. Citing the conclusion reached by another Tenth Circuit panel in *Sandoval v. Barnhart*, 209 Fed.Appx. 820 (10th Cir. 2006) (unpublished), counsel for the Commissioner posits that Plaintiff's argument is based upon a misreading of Appendix C and the GED section of the DOT. [Dkt. 17, pp. 4-5].[4] Unfortunately, the rationale for the ALJ's conclusion which is advanced by counsel in his response brief is not contained in the ALJ's written decision. Nor is there a definition or elaboration offered for the term "content" as used by the ALJ in explaining to Plaintiff's attorney that simple, routine and

---

[4] While addressing the claimant's subsequent claim for EAJA attorney fees, the *Pritchett* court noted an implicit disagreement with the analysis in *Sandoval*. *See Pritchett v. Astrue*, 287 Fed.Appx. 680, 683, 2008 WL 2828828 (10th Cir. 2008) (unpublished).

repetitive limitations were based upon "psychological aspects" of work activity, not physical movement. [R. 947]. The Court cannot draw factual conclusions on behalf of the ALJ and must evaluate his findings based solely on the reasons stated in the decision. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962). Affirming this post hoc effort to salvage the ALJ's decision would require the Court to overstep its institutional role and usurp essential functions committed in the first instance to the administrative process. *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir.2004). Consequently, the Court finds this case must be reversed and remanded for an explanation, if any, that would resolve the conflict so as to permit reliance on the VE's testimony.

## Treating Physicians' Opinions

Generally, the ALJ should give greater weight to the opinions of doctors who have treated the claimant than those who have not. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.2003). "The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.2004); see also Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *2. But if either of these requirements is not met, the ALJ is not required to give the opinion controlling weight; in fact, it may be error to do so. *Watkins*, 350 F.3d at 1300; SSR 96-2p, 1996 WL 374188, at *2. Instead, the ALJ must decide whether to reject the opinion altogether or assign it some lesser weight. *Watkins*, 350 F.3d at 1300-01. "[T]he ALJ must 'give good reasons in the notice of determination or decision' for the weight he ultimately

assigns the opinion." *Id.* at 1301 (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration omitted).

In this case, Plaintiff claims the ALJ improperly failed to grant controlling weight to the RFC opinion of James W. Zeiders,, M.D. The opinion she claims is entitled to controlling weight consists of a two-part RFC checklist form dated June 21, 1995 and November 16, 1998. [R. 251-253, 348]. On the first form, Dr. Zeiders indicated Plaintiff is able to: sit 2 hrs. at one time; stand 1 hour at one time; walk 1 hour at one time; sit 4 hrs. total during an entire 8-hour day; stand 2 hrs. during an entire 8-hour day; walk 1 hr. during an entire 8-hour day; continuously lift 0-5 lbs; frequently lift 6-10 lbs.; occasionally lift 11-20 lbs.; carry 0-10 lbs. continuously; carry 11-20 lbs. frequently; occasionally carry 21-25 lbs.; use hands for repetitive action such as simple grasping, pushing and pulling of arm controls, fine manipulation; use feet for repetitive movements as in pushing and pulling of leg controls; occasionally bend and climb; frequently reach; squat and crawl not at all; that she had no restrictions involving unprotected heights, exposure to marked changes in temperature and humidity or exposure to dust, fumes and gases; and that she had mild restrictions involving being around moving machinery and driving automotive equipment. [R. 251-253]. The second form, signed by Dr. Zeiders in 1998, was provided by Plaintiff's attorney on which the doctor answered "yes" to the question: "Does Debra need to alternate between sitting and standing to relieve her pain and other symptoms;" ... "every 30-40 mins." [R. 348]. He indicated Plaintiff could carry/lift: up to 10 lbs. frequently; 11-25 lbs. occasionally and over 25 lbs. infrequently. *Id.* To the question: "Is laying down periodically necessary for pain relief" Dr. Zeiders responded: "sometimes." *Id.*

The ALJ addressed this evidence and explained that Dr. Zeiders' statements were not supported by the record. [R. 654, 656-657]. He pointed out that Dr. Zeiders had not seen Plaintiff between February 1, 1989 and August 2, 1993.[5] [R. 656]. He noted another lapse in treatment from November 11, 1995 (five months after the first RFC statement) to July 21, 1998, when Plaintiff complained only of heel pain. *Id.* The ALJ correctly reported that the last treatment notation by Dr. Zeiders before he answered counsel's questionnaire, revealed he had found no true radicular pattern to Plaintiff's chronic symptoms in the lower extremities and that her hip structure and SI joints looked good. *Id.* The ALJ noted there were no additional progress notes or objective findings to support Dr. Zeiders' answers to counsel's questionnaire. *Id.* Although he questioned Dr. Zeiders' status as treating physician, the ALJ considered all Dr. Zeiders' treatment records and his RFC statement in accordance with the requirements of 20 C.F.R. §§404.1527 and 416.927. [R. 654, 657].[6]

In addition to his finding that Dr. Zeiders' statement was not supported by his own treatment records or objective findings, the ALJ weighed Dr. Zeiders' opinion against other medical evidence in the record, including the opinion of Plaintiff's general medical care provider, W.T. Manning, M.D. [R. 656]. Dr. Manning treated Plaintiff for

---

[5] Plaintiff was diagnosed with thoracic outlet syndrome, a combination of pain in the neck and shoulder, numbness and tingling of the fingers and weak grip caused by compression of blood vessels or nerves in the shoulder and armpit, on April 21, 1988. [R. 147-148, 183]. *See* medical encyclopedia online at: http://www.nlm.nih.gov/medlineplus/ency/article/001434.htm (updated 1/12/2009).

[6] The factors the ALJ must apply in evaluating the weight to accord a medical source opinion include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. §§404.1527 and 416.927. *See Watkins,* 350 F.3d at 1300.

a variety of ailments, including back pain, from February 1988 to at least July 2001. [R. 171-176, 187-188, 229-235, 302-323, 447-523]. Dr. Manning prescribed anti-inflammatory medication, physical therapy, a back brace and weight loss and arranged the consultative appointment with Dr. Zeiders for Plaintiff. *Id.* On February 12, 1993, Dr. Manning opined that Plaintiff "would be partially disabled from those occupations requiring a lot of standing, stooping, or lifting, but, in general, her health is such that other types of employment surely could be found." [R.170]. The ALJ concurred in this assessment. [R. 656].

The ALJ also noted the report of the consultative physician, Jack H. Brown, M.D., who examined Plaintiff on March 17, 1993, and found full range of motion of her cervical spine, shoulders, elbows, wrists, finger joints hips, knees, ankles, foot joints with left hip tenderness to palpation in the buttocks area, radiating down into the leg and pain at 45-50 degrees on straight leg raising, normal gait, heel and toe walking, fine and gross motor dexterity, no real joint deformity and no redness, swelling, heat or tenderness in the joints. [R. 176].

It is the ALJ's province, as fact finder, to decide the appropriate weight to be given contradictory medical evidence. *Oldham v.* Astrue, 509 F.3d 1254, 1257-8 (10th Cir. 2007) (although evidence may support contrary findings, court does not displace agency's choice between two fairly conflicting views). Because it is the ALJ, not a physician, who is charged with determining a claimant's RFC from the medical record, the ALJ was not bound by any physician's RFC assessment. See SSR 96-5p; 20 C.F.R. §§ 404.1527(e) and 416.927(e); *Howard v. Barnhart*, 379 F.3d 945 C.A.10 (Okla.),2004. In assessing Plaintiff's RFC in this case, the ALJ considered the opinions of Plaintiff's

13

treating and examining physicians. That he preferred the opinion of one treating physician over that of another treating physician is not error. Dr. Manning's opinion, in conjunction with the findings of an examining agency consultant, provides a legitimate reason for the ALJ's rejection of Dr. Zeiders' statements concerning Plaintiff's functional limitations. In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole. See 20 C.F.R. 404.1527(d)(4). The Court is satisfied that the ALJ relied on the relevant factors in weighing the medical evidence even if he did not specifically discuss them. *See Oldham* 509 F.3d at 1258 (explaining that explicit discussion of all the § 404.1527(d) factors is not a prerequisite to meaningful review). All that is required in a decision is that "good reasons" be given and that the discussion of the evidence allows the subsequent reviewer to follow the ALJ's reasoning. *See* SSR 06-03p, 2006 WL 2329939, at *6; *Oldham* 509 F.3d at 1258. The Court finds no basis for reversal with regard to the ALJ's treatment of Dr. Zeiders' RFC statement.

## Credibility Determination

Despite Plaintiff's allegations to the contrary, the ALJ did not ignore evidence of Plaintiff's complaints of severe pain. [Dkt. 16, p. 7]. He found that Plaintiff had severe impairments of mild to moderate pain which was sufficiently severe as to be noticeable to her at all times and that she takes medication for relief of her symptoms. [R. 653]. After considering the medical evidence, Plaintiff's daily activities, her testimony and other evidence in the record, the ALJ concluded Plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. The ALJ is "the individual optimally positioned to observe and assess witness

credibility." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). Credibility determinations are peculiarly the province of the finder of fact, and the Court does not upset such determinations when supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Plaintiff does not point to any evidence that the ALJ improperly considered or that he failed to consider. While the record has much evidence concerning Plaintiff's pain and her efforts to relieve it, the record contains no evidence that contradicts or overwhelms the ALJ's credibility determination. The Court declines Plaintiff's invitation to reweigh the evidence and to substitute its judgment for that of the ALJ. *See Casias*, 933 F.2d at 800.

## Conclusion

This case is REVERSED and REMANDED with directions to the Commissioner to address the apparent conflict between Plaintiff's inability to perform more than simple, routine and repetitive tasks and the level-three reasoning required by the job identified as appropriate for her by the VE.

SO ORDERED this 31st day of August, 2009.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE